# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### CLARKSBURG

| | |
|---|---|
| **TRACI HIBBARD, as parent and natural guardian of K.M., a minor, and in her own right,** | **CIVIL DIVISION** <br><br> Docket No.: 1:23-cv-00074-TSK <br> Chief District Judge Thomas S. Kleeh |
| Plaintiff, | |
| vs. | |
| **ANTHONY W. WOLFE, and POLARIS INDUSTRIES, INC.,** | |
| Defendants. | |

## MOTION TO ENFORCE SETTLEMENT

COMES NOW, Defendant, Polaris Industries Inc. ("Defendant" or "Polaris"), by and through counsel, and hereby moves this Court for an Order enforcing the settlement entered into by Plaintiff and Polaris in the above-referenced proceeding. In support of this motion, Polaris states as follows:

1. This action was filed in the Circuit Court of Monongalia County, West Virginia and was removed to this Court on or about September 20, 2023. *See* ECF No. 1.

2. Since removal, Plaintiff has sought and received multiple extensions of the scheduling order. *See, e.g.*, ECF Nos. 15–16, 29–30, 35–36.

3. Beginning in mid-November 2024, Defendant's counsel and Plaintiff's counsel entered into settlement negotiations, with the initial demand made by Plaintiff's counsel on November 19, 2024.[1]

---

[1] The communications regarding the settlement agreement have not been attached as an exhibit to this Motion in order to preserve the confidential nature of the settlement reached. If the Court seeks to review these communications, Polaris will produce the same for *in camera* review or will seek leave to file the materials under seal.

4. The terms of the settlement and the settlement amount continued to be negotiated during the last week of November and the first week of December by telephone calls and email communications.

5. On December 6, 2024, counsel for Polaris spoke with counsel for Plaintiff, Pete Friday, and reiterated the current status of the settlement negotiations and the terms that were required by Polaris.

6. On December 19, 2024, counsel for Polaris and counsel for Plaintiff had a text exchange including a settlement offer amount that was ultimately accepted by Plaintiff.

7. On December 30, 2024, on the day that her expert witness disclosures were due, counsel for Plaintiff sent yet another request for Polaris to agree to an extension of time for Plaintiff to file expert opinions.

8. That afternoon, counsel for Polaris stated that she was unable to agree to a third request for an extension of time without consent from her client and, given the Christmas and New Years holidays, could not agree to the extension beyond the day of the deadline.

9. On December 30, 2024, at 6:51 p.m. EST, Plaintiff's counsel sent a text to Defendant's counsel saying: "Melissa: Plaintiff hereby accepts the $[CONFIDENTIAL] offer from Polaris. Confidential as to amount and terms – no disclosure to co-defendant. Pete."

10. On January 2, 2025, counsel for Polaris sent counsel for Plaintiff a draft settlement release and asked for approval of the language and for payee information, which counsel for Plaintiff provided on the same day. Plaintiff made no suggestions, modifications or edits to the settlement agreement language.

11. On January 3, 2025, counsel for Plaintiff sent counsel for Defendant a copy of his W-9 needed to effectuate the settlement.

12.     On January 23, 2025, counsel for Polaris sent counsel for Plaintiff the FINAL Confidential Settlement Agreement and General Release for signature, which included the payee information Plaintiff's counsel previously had provided.

13.     On February 11, 2025, not having received the signed Confidential Settlement Agreement and General Release, counsel for Defendant reached out to counsel for Plaintiff asking about status and, for the first time, learned that Plaintiff's counsel was having problems getting his client to sign the negotiated settlement. Plaintiff's counsel provided no information whatsoever as to why Plaintiff is unwilling to sign the Confidential Settlement Agreement and General Release.

14.     On February 18, 2025, Plaintiff's counsel filed a Motion to Withdraw as counsel.

15.     West Virginia law "favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." *Webb v. City Nat'l Bank of W. Va., N.A.*, No. 16-0660, 2017 WL 2210148, at *3 (W. Va. May 19, 2017) (quoting Syl. Pt. 1, *Sanders v. Roselawn Mem'l Gardens, Inc*., 152 W. Va. 91, 159 S.E.2d 784 (1968)).

16.     "A settlement agreement is a contract governed by fundamental principles of contract law. As such, the settlement agreement comes into being as soon as an offer, acceptance, and consideration are exchanged." *U.S. ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co., Inc.*, 34 F. Supp. 2d 397, 399 (N.D. W. Va. 1999), *aff'd*, 203 F.3d 824 (4th Cir. 2002).

17.     Courts may enforce settlement agreements when there is a meeting of the minds between the parties. *See Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) ("District courts have inherent authority . . . to enforce settlement agreements."); *see also State ex rel. Evans v. Robinson*, 197 W. Va. 482, 485, 475 S.E.2d 858, 861 (1996).

18. There was a clear representation by counsel of the meeting of the minds on December 30, 2025, and the settlement was both fairly made and not in contravention of any law or public policy.

19. Further, on January 2, 2025, there was a full agreement by counsel for Plaintiff to the settlement amount and the terms of the Confidential Settlement Agreement and General Release.

20. Polaris relied on the representation that the matter had been settled and that the terms of a full and final Confidential Settlement Agreement and General Release were agreed by the relevant parties.

21. Polaris relied on the representation that Plaintiff had accepted the settlement and, due to that reliance, did not continue to expend efforts and expenses to defend this matter and meet the deadlines set by this Court, including but not limited to conducting additional discovery.

22. Polaris will be irreparably prejudiced if Plaintiff is permitted to break the contract of settlement and it is forced to continue to defend this matter.

**WHEREFORE**, Polaris Industries Inc., respectfully requests that this Court enter an Order enforcing the settlement reached between Plaintiff and Polaris and for any other relief that the Court deems proper.

**POLARIS INDUSTRIES INC.**

By: */s/ Melissa Foster Bird*

Melissa Foster Bird, Esquire (WVSBN 6588)
Shaina D. Massie, Esquire (WVSBN 13018)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, WV  25701
Telephone: (304) 526-3500
Fax: (304) 526-3599
Email: melissa.fosterbird@nelsonmullins.com
Email: shaina.massie@nelsonmullins.com

*COUNSEL FOR DEFENDANT*
*POLARIS INDUSTRIES INC.*

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA CLARKSBURG

| | |
|---|---|
| **TRACI HIBBARD, as parent and natural guardian of K.M., a minor, and in her own right,** | **CIVIL DIVISION** |
| Plaintiff, | Docket No.: 1:23-cv-00074-TSK<br>Chief District Judge Thomas S. Kleeh |
| vs. | |
| **ANTHONY W. WOLFE, and POLARIS INDUSTRIES, INC.,** | |
| Defendants. | |

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 21st day of February, 2025, a true copy of the foregoing ***"Motion to Enforce Settlement"*** was electronically filed with the Clerk of the Court through the CM/ECF System which will send electronic notification of such filing to counsel of record.

*/s/ Melissa Foster Bird*
Melissa Foster Bird, Esq. (WVSBN 6588)