IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

KEMAURI MCGEE,

    Plaintiff,

v.                                                                                          CIVIL ACTION NO. 1: 23-CV-74
                                                                                                                 (JUDGE THOMAS S. KLEEH)

ANTHONY WOLFE,

    Defendants.

**MOTION TO APPORTION DAMAGES FOR PURPOSES OF MEDICAL LIEN AND TO FILE CERTAIN DOCUMENTS UNDER SEAL**

Comes now the Plaintiff and requests that this Court allocate the Plaintiff's settlement recoveries among the various items of damages available at law for purposes of determining the extent of the Pennsylvania Department of Human Service's ("DHS") lien, for an Order authorizing her to supplement this motion under seal and setting this motion for a hearing. In support thereof, the Plaintiff states as follows:

    **I.**    **STATEMENT OF FACTS**

    **A. The Side-by-Side Wreck**

This action arises from a side-by-side utility vehicle accident that occurred on May 28, 2021. (Pl.s' Compl. at ¶ 7., Docket #1-2.) On the date of the incident, the Plaintiff was 14 years old. Plaintiff is, and at all times was, a resident of Waynesburg, Pennsylvania. Plaintiff was friends with Cienna Cook, who was the daughter of Defendant Anthony Wolfe's former significant other. (Dep., A. Wolfe, at P. 9, attached as Exh. A.) Defendant Wolfe and Cienna maintained a relationship and she, along with Plaintiff and two other teenage girls, Cheyenne and Emily, were invited to Wolfe's property for the weekend. *Id.* at Pp. 9-11.

Wolfe resides in Morgantown and the Pendleton property is recreational. (Dep., A. Wolfe, Exh. A, at Pp. 6.) Wolfe has a camper that he brings to the property and other family members do the same. *Id.* at Pp. 86-87. Wolfe also has two side by side utility vehicles that he uses on the property, a 2010 Polaris Ranger and 2010 Polaris RZR. *Id.* at Pp. 11-13. Anthony Wolfe testified that he specifically told the girls that "only Cienna and Emily can drive the side by sides." *Id.* at Pp. 27-28. Tonya Wolfe testified that Anthony said, "You [Cienna] and Emily are the only ones allowed to drive." (Dep. T. Wolfe, at P. 18, attached as Exh. B.) Kemauri's mother, Traci Hibbard, also testified that she had instructed her daughter not to operate a side by side. (Dep. T. Hibbard, at Pp. 26-27, attached as Exh. C.) Kemauri testified that Wolfe had allowed her to operate the side by sides and had showed her the track or course that they use for riding side by sides. (Dep. K. McGee, Pp. 40-41, attached as Exh. D.) The course ran both on Wolfe's property, and off of it, and included in a part a public road, known as Lower Timber Ridge Road. (Dep., A. Wolfe, Exh. A, at Pp. 28-29, 80-81.)

When this incident occurred, Kemauri was operating the Polaris Ranger and following Cheyenne, who was operating the RZR. According to Kemarui, Cheyenne, braked quickly, she did as well, the Ranger developed a wobble, she lost control, and rolled the Ranger. (Dep. K. McGee, Exh. D, at Pp. 52-56.) Kemauri sustained severe injuries, including a concussion rendering her unconscious, a severely fractured left femur, a lacerated left knee, and a degloving injury to her left foot.

Kemauri was initially transported to Grant Memorial Hospital and then transferred to West Virginia University - Ruby Memorial. Shortly after arriving at WVU, Kemauri underwent an open procedure on her left leg with knee arthrotomy, intramedullary nail placement, laceration repair and wound vac placement. While at WVU, Kemauri developed an infection and sepsis and

was transferred on June 5, 2021, to Children's Hospital in Pittsburgh. Kemauri's injuries were severe and extensive. Plaintiff will supplement this motion with photographs filed under seal.

At Children's, Kemauri underwent five additional procedures, including a full thickness excision of her left foot and debridements of her wounds. Kemauri was discharged from Children's to an extended care facility, Children's Home of Pittsburgh. She was finally discharged home on July 19, 2021. After discharge, Kemauri treated with orthopedics and podiatry at Jefferson Hospital in Jefferson Hills, Pennsylvania. She underwent additional debridement procedures after discharge. She has continued following up with orthopedics due to ongoing pain in her left knee. Kemauri's medical expenses total approximately $616,138.87, for which Pennsylvania DHS maintains a present lien for $96,774.72 (redacted Statement of Claim Summary attached as Exh. E.) Kemauri continues experiencing issues in her knee, emotional distress related to this incident, and her scarring is permanent.

Anthony Wolfe did not have insurance coverage on the Polaris Ranger. He did have a homeowner's policy issued by State Farm with respect to his home in Morgantown (redacted policy attached as Exh. F.) The policy provides bodily injury limits of $500,000. The Policy excludes coverage for injuries arising from a side-by-side vehicle use or ownership, if the loss occurs off of an "insured location." *Id.* at Pp. 23-24. "Insured location" is defined on pages 2-3 to include Wolfe's house in Morgantown, other "grounds used" used by Wolfe "as a residence" and "premises used by [Wolfe] in connection with" his house or the "other grounds." *Id.* at Pp. 2-3. State Farm issued Anthony Wolfe a reservation of rights letter on March 7, 2025 (Reservation of Rights Letter attached as Exh. G). State Farm contended that because the loss did not occur on an "insured location" as defined in the policy, there was no coverage for this loss. Hence, if Lower Timber Ridge Road was not an "insured location" there would be no coverage.

**B. Allegations, Defenses and Procedural History**

When this matter was initially filed, Kemauri was a minor and her mother named as plaintiff. Kemauri turned 18 in 2024. In the Complaint, Plaintiff alleges negligence against Defendant Wolfe and products liability theories against Polaris Industries, Inc. ("Polaris"). Plaintiff was initially represented by another law firm, Friday & Cox, LLC. Friday & Cox reached a *confidential* settlement with Polaris, that this Court enforced by Order (Docket No. 43) on March 4, 2025. The Court, by the same Order, held Friday & Cox's Motion to Withdraw in abeyance. The undersigned counsel entered an appearance substituting for Friday & Cox on March 20, 2025 (Docket No. 46).

Plaintiff disclosed two experts in this matter, Christopher Marchionda and David Kassekert (Docket No. 37). Mr. Kassekert is an engineer. His opinions centered on the restrictions imposed by the manufacture, Polaris, and industry standards, that only licensed drivers over the age of 16 should operate side by side vehicles such as the Polaris Ranger (Report attached as Exh. H.) Hence, according to Mr. Kassekert, Anthony Wolfe was negligent in allowing Kemauri to operate the vehicle and this negligence was the "primary cause of Ms. McGee's [sic] injuries . . . ." Mr. Marchionda is a vocational expert who opined that Kemauri had future lost earnings in a range of $454,140 and $1,389,960 (Report attached as Exh. J.)

Kemauri, Wolfe, and State Farm mediated this case on June 5, 2025. The primary issues at mediation were: 1-Anthony Wolfe's liability, if any; 2-Kemauri's comparative liability; and 3-the existence of insurance coverage. The parties were not able to reach a settlement at mediation, but did several days later, in the amount of $200,000. The settlement is intended as a release of all claims for damages, including for lost future earning capacity, future medical expenses, scarring, pain and suffering and any other damages available at law.

### C. Lien Negotiations

At the time of this incident, and thereafter, Kemauri was covered by Pennsylvania Medicaid, administered by the Pennsylvania DHS. Following the settlement with Polaris, DHS accepted the maximum amount recoverable under Pennsylvania law in partial satisfaction of its lien[1]. On May 15, 2025, the undersigned counsel wrote to DHS and requested an updated lien letter in advance of mediation (letter attached as Exh. J.) Plaintiff's counsel telephoned DHS on May 29, 2025 and again on June 5, 2025, hoping to talk in advance of mediation. On both occasions, the undersigned was unable to reach the representative, but left voicemails. On June 11, 2025, Plaintiff's counsel wrote to DHS requesting a waiver of the remaining portion DHS's lien[2]. Attached to this letter were the transcript excerpts attached to the instant motion, Plaintiff's expert reports, photographs of the Plaintiff's injuries, the applicable State Farm policy, and State Farm reservation of rights letter. DHS responded that it would reduce its lien by its share of attorneys' fees and costs, but no more (letter attached as Exh. K). Plaintiffs' counsel again wrote to DHS requesting that it accept a reduced lien and offering to pay 10% of the remaining lien, $9,677.74[3]. DHS responded on July 3, 2025 stating "If you are asking for an additional reduction, please provide the department an overview on why the department needs to reduce the lien" (attached as Exh. L.) From DHS's response, it is clear that it had not reviewed any of the materials previously provided or acted in accordance with its mandates under applicable law.

II.  **ARGUMENT**

DHS is entitled to a lien on the proceeds of the Plaintiff's settlements, but only to the extent that the settlement represents payment for medical expenses. DHS is not entitled to a lien on those portions of the settlement representing payment for lost future earnings, pain and

---

[1] Plaintiff will supplement this Motion with this correspondence under seal, as it necessarily divulges the terms of the Polaris settlement.
[2] Plaintiff will provide under seal.
[3] Plaintiff will provide under seal.

suffering, scarring, loss of enjoyment of life, and other items of damages available at law. Accordingly, DHS's lien must be reduced commensurate with the total settlement.

A state may not maintain a lien against portions of a Medicaid beneficiary's settlement that do not represent compensation for medical expenses. *See e.g. Ark. HHS v. Ahlborn*, 546 U.S. 268 (2006). 55 Pa. Code § 259.3 provides that DHS "will only recover from the that portion of a tort recovery which represents payment for medical care by the third party." 62 P.S. § 1409.1(b) provides that "In the event of judgment, award or settlement in a suit or claim against a third party or insurer (1) . . . the court or agency shall allocate the judgment or award between the medical portion and other damages and shall allow the department a first lien against the medial portion of the judgment or award . . . ." The statute further provides that DHS "shall be given reasonable advance notice before the court makes any allocation of judgment or award under this section." 62 P.S. § 1409.1(b)(3).

*McKinney v. Phila. Hous. Auth.*, 2010 U.S. Dist. LEXIS 86773 (E.D. Pa. 2010) is illustrative of how the Court may apportion damages. In *McKinney*, the parties settled for $11,913,000 and DHS claimed a lien of $1,265,896.16. *Id.* at *4-6. The Plaintiff contended that DHS could only collect approximately $200,000 of its lien. *Id.* at *13. DHS claimed it was entitled to collect its entire lien. *Id.* at *18. The Court disagreed with both contentions. Dealing with DHS, it stated, "[DHS's] proposed rule ignores the reality of settlement. Settlement by its very nature, involves compromise. . . . [DHS's] proposed rule amounts to a 'heads I win, tails you lose' scenario.'" *Id.* at *25. If Plaintiff had traded away "some of its recovery prospects for certainty (and cash) via a settlement, [DHS] would reap the benefit without giving anything up." *Id.* at *26. The Court ultimately concluded that it was in a good position to determine the strengths and weaknesses of Plaintiffs' case and allocate the risks of establishing liability based on the pleadings and materials before it. *Id* at *29-30. The Court concluded that the Plaintiffs had a

relatively strong case, but that a settlement was logical due to the timing and potential illiquidity of defendants. *Id.* at * 34. Accordingly, the Court determined that the settlement encompassed two-thirds of the value of the case, reduced the lien to that amount and again by DHS's share of attorneys' fees and costs. *Id.* at *35-36.

The settlement presently before the Court represents less than one-half of the low end value of Plaintiff's future lost earnings claim. It represents a small fraction of the likely award of general damages that would result from this case, given the severity of the Plaintiff's injuries. This matter was settled with State Farm and Anthony Wolfe for $200,000, largely based on the probable lack of insurance coverage. That is the primary issue before this Court and one which this Court is capable of determining. *See* Syl. Pt. 1 *Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002)("Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law.")

Had this case not been settled at mediation, Plaintiff's next step would have been to file a declaratory judgment action. In that action, Plaintiff would have asked the court to declare the existence of coverage—essentially that Lower Timber Ridge Road constituted an "insured location." Plaintiff would have a path for that argument as the issue is undecided in West Virginia, but that path is a very narrow one. There are cases extending insurance coverage for ATV wrecks to locations adjacent to the insured's property, but those cases occur on adjacent *private* property. *See e.g. Allstate Ins. Co. v. Drumheller,* 185 Fed. Appx. 152, 2006 U.S. App. LEXIS 16138 (3rd Cir. 2006) (injury on adjacent private property); *Nationwide Mut. Ins. Co. v. Prevatte*, 108 N.C. App. 152, 423 S.E.2d 90 (1992)(injury on nearby private trail regularly used by insured). The cases dealing with *public* roads generally find no coverage. *See e.g. Sheldon v. Zimmerman,* 2004 Mich. App. LEXIS 1989 (1989)("a public road does not fall within the definition of 'premises' and is not an 'insured location' under the homeowner's policy"); *Pike v. Am. States Preferred Ins.*

*Co.*, 55 P.3d 212 (Colo. App. 2002)("go-cart was being operated on a public road" and therefore not "on an insured location" such that coverage would apply.); *Ind. Ins. Co. v. Dreiman*, 804 N.E.2d 815 (Ind. App. 2004)("The plaint and ordinary meaning of the term 'premises' does not encompass a public roadway" and therefore no coverage for dirt bike accident on neighboring road.).

The insurance cases, finding no coverage on public roads, align with West Virginia law. W. Va. Code § 17A-13-1 authorizes UTVs to be operated on public roads, when properly equipped, registered with the DMV, and otherwise compliant with the West Virginia motor vehicle registration requirements. W. Va. Code § 17D-2A-3 requires liability insurance for all motor vehicles registered in the State. Thus, an ATV operated on a public road, is required to have another type of coverage, which indisputably Wolfe did not have here.

The Plaintiff also had liability issues against her. Both Anthony and Tonya Wolfe testified that Kemauri was not authorized to operate the ATV. If a jury believed them, there would be no liability on Anthony Wolfe for negligently permitting Kemauri to operate the side by side. Similarly, there is a very real issue with Kemauri's comparative fault. In West Virginia, a child of fourteen is presumptively capable of negligence. *See Pino v. Sanchez,* 185 W. Va. 476 (1991). Kemauri's own mother testified that she was told not to operate any four wheelers at the property and there is no explanation for why the side-by-side rolled. A jury could very easily determine that Kemauri was negligent in operating the side-by-side in contravention of her mother's directive, the written warnings on the machine, and without necessary experience and training. It could also conclude that she was negligent in the manner of operation.

In sum, the path to a collectable verdict in this case was daunting. If the jury believed Mr. and Mrs. Wolfe, and Kemauri's mother, the result would be a defense verdict. If she lost on the declaratory judgment action, she would not recover *any* verdict. Rather than risk those

very real contingencies, she settled with State Farm and Anthony Wolfe for much less than the case was worth. This protected her interests, and to an extent, DHS's as well. DHS must, however, bear its portion of the burdens of a settlement, as well as the benefits. The Plaintiff therefore requests that this Court apportion the majority of the present settlement funds to the other items of damages, and reduces DHS's lien accordingly.

### III. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court enter an ORDER allowing the Plaintiff to file a supplement to this Motion under seal and set this matter for a hearing after August 11, 2025 to allow DHS to respond and/or participate.

. Submitted this __7th__ of July 2025.

                                                             /s/ Edmund L. Wagoner
Edmund L. Wagoner (WVSB #10605)
Matthew B. Hansberry (WVSB # 10128)
Hansberry & Wagoner, PLLC
265 High Street, 3rd Floor
Morgantown, WV  26505
Tel:  (304) 470-2056
eddie@hanswag.com
matt@hanswag.com
*Counsel for Plaintiff, Kemauri McGee*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

KEMAURI MCGEE,

    Plaintiff,

v.                                                       CIVIL ACTION NO. 1: 23-CV-74
                                                        (JUDGE THOMAS S. KLEEH)

ANTHONY WOLFE,

    Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on the __7th__ day of July, 2025, I filed the foregoing "Motion to Apportion Damages for Purposes of Medical Lien and to File Certain Documents Under Seal" with the ECF filing system, which will notify counsel of record, and that I have further sent a copy via certified mail as addressed below:

                    Division of Third Party Liability
                    Department of Human Services
                          PO Box 8486
                       Harrisburg, PA 17105

                                                      */s/ Edmund L. Wagoner*
                                                 Edmund L. Wagoner (WVSB #10605)
                                                 *Counsel for Plaintiff, Kemauri McGee*